No. 22-2889

# UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

IN RE: BROILER CHICKEN ANTITRUST LITIGATION

END USER CONSUMER PLAINTIFF CLASS,
*Plaintiff-Appellee*

v.

FIELDALE FARMS CORPORATION, et al.,
*Defendants*

APPEAL OF: JOHN ANDREN, *Objector*

U.S. District Court for the Northern District of Illinois, Eastern Division
The Honorable Thomas M. Durkin / No. 1:16-cv-08637

## BRIEF OF PLAINTIFF-APPELLEE END USER CONSUMER PLAINTIFF CLASS

Steve W. Berman
HAGENS BERMAN SOBOL
SHAPIRO LLP
1301 Second Avenue
Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
steve@hbsslaw.com

Brent W. Johnson
COHEN MILSTEIN SELLERS &
TOLL, PLLC
1100 New York Avenue NW
Suite 500, West Tower
Washington, DC 20005
Telephone: (202) 408-4600
bjohnson@cohenmilstein.com

*Counsel for Plaintiff-Appellee End User Consumer Plaintiff Class*
[Additional counsel on signature block]

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 22-2889

Short Caption: In re: Broiler Chicken Antitrust Litigation

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐         **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

 Plaintiff-Appellee End User Consumer Plaintiff Class

_____

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

 Hagens Berman Sobol Shapiro LLP and Cohen Milstein Sellers & Toll, PLLC

_____

(3)    If the party, amicus or intervenor is a corporation:

    i)        Identify all its parent corporations, if any; and

        N/A

    ii)        list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: /s/ Steve W. Berman          Date:  January 18, 2023

Attorney's Printed Name:   Steve W. Berman

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes  ☑   No  ☐

Address:  1301 Second Avenue, Suite 2000

      Seattle, WA 98101

Phone Number: 206-623-7292          Fax Number:  N/A

E-Mail Address: steve@hbsslaw.com

rev. 12/19 AK

i

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 22-2889

Short Caption: In re: Broiler Chicken Antitrust Litigation

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    Plaintiff-Appellee End User Consumer Plaintiff Class

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Hagens Berman Sobol Shapiro LLP and Cohen Milstein Sellers & Toll, PLLC

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: /s/ Shana E. Scarlett    Date: January 18, 2023

Attorney's Printed Name: Shana E. Scarlett

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  Yes ☐  No ☑

Address: 715 Hearst Avenue, Suite 202

    Berkeley, CA 94710

Phone Number: 510-725-3000    Fax Number: N/A

E-Mail Address: shanas@hbsslaw.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 22-2889

Short Caption: In re: Broiler Chicken Antitrust Litigation

  To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

  The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

 Plaintiff-Appellee End User Consumer Plaintiff Class

_____

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

 Hagens Berman Sobol Shapiro LLP and Cohen Milstein Sellers & Toll, PLLC

_____

(3)     If the party, amicus or intervenor is a corporation:

  i)      Identify all its parent corporations, if any; and

  N/A

  ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

  N/A

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

 N/A

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

 N/A

Attorney's Signature: Kevin K. Green                    Date: January 18, 2023

Attorney's Printed Name:  Kevin K. Green

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).     Yes ☐     No ☑

Address:  533 F Street, Suite 207

 San Diego, CA 92101

Phone Number: 619-929-3340                    Fax Number:  N/A

E-Mail Address: keving@hbsslaw.com

rev. 12/19 AK

Save As    Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 22-2889

Short Caption: In re: Broiler Chicken Antitrust Litigation

 To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

 The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

 Plaintiff-Appellee End User Consumer Plaintiff Class

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

 Hagens Berman Sobol Shapiro LLP and Cohen Milstein Sellers & Toll, PLLC

(3) If the party, amicus or intervenor is a corporation:

 i) Identify all its parent corporations, if any; and

  N/A

 ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

  N/A

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

 N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

 N/A

Attorney's Signature: Breanna Van Engelen Date: January 18, 2023

Attorney's Printed Name:  Breanna Van Engelen

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). Yes ☐ No ☑

Address:  715 Hearst Avenue, Suite 202

 Berkeley, CA  94710

Phone Number: 510-725-3000 Fax Number:  N/A

E-Mail Address: breannav@hbsslaw.com

rev. 12/19 AK

Save As    Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 22-2889

Short Caption: In re: Broiler Chicken Antitrust Litigation

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    Plaintiff-Appellee End User Consumer Plaintiff Class

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Hagens Berman Sobol Shapiro LLP and Cohen Milstein Sellers & Toll, PLLC

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

    N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

    N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: /s/ Rio S. Pierce     Date: January 18, 2023

Attorney's Printed Name: Rio S. Pierce

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes ☐   No ☑

Address: 715 Hearst Avenue, Suite 202

    Berkeley, CA 94710

Phone Number: 510-725-3000     Fax Number: N/A

E-Mail Address: riop@hbsslaw.com

rev. 12/19 AK

v

<span>Save As</span>   <span>Clear Form</span>

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 22-2889

Short Caption: In re: Broiler Chicken Antitrust Litigation

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    Plaintiff-Appellee End User Consumer Plaintiff Class

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Hagens Berman Sobol Shapiro LLP and Cohen Milstein Sellers & Toll, PLLC

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: Brent W. Johnson      Date: January 18, 2023

Attorney's Printed Name: Brent W. Johnson

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes [ ]   No [✓]

Address: 1100 New York Avenue NW, Suite 500, West Tower

    Washington, DC 20005

Phone Number: 202-408-4600      Fax Number: N/A

E-Mail Address: bjohnson@cohenmilstein.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 22-2889

Short Caption: In re: Broiler Chicken Antitrust Litigation

　　To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

　　The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐　　**PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)　　The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Plaintiff-Appellee End User Consumer Plaintiff Class

(2)　　The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Hagens Berman Sobol Shapiro LLP and Cohen Milstein Sellers & Toll, PLLC

(3)　　If the party, amicus or intervenor is a corporation:

　　i)　　Identify all its parent corporations, if any; and

　　　　N/A

　　ii)　　list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

　　　　N/A

(4)　　Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)　　Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: Daniel H. Silverman　　　　Date: January 18, 2023

Attorney's Printed Name: Daniel H. Silverman

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).　Yes ☐　No ☑

Address: 1100 New York Avenue NW, Suite 500, West Tower

Washington, DC 20005

Phone Number: 202-408-4600　　　　Fax Number: N/A

E-Mail Address: dsilverman@cohenmilstein.com

rev. 12/19 AK

Save As    Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 22-2889

Short Caption: In re: Broiler Chicken Antitrust Litigation

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐      **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)   The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Plaintiff-Appellee End User Consumer Plaintiff Class

(2)   The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Hagens Berman Sobol Shapiro LLP and Cohen Milstein Sellers & Toll, PLLC

(3)   If the party, amicus or intervenor is a corporation:

i)      Identify all its parent corporations, if any; and

N/A

ii)      list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A

(4)   Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)   Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: Benjamin D. Brown      Date: January 18, 2023

Attorney's Printed Name: Benjamin D. Brown

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes ☐   No ☑

Address: 1100 New York Avenue NW, Suite 500, West Tower

Washington, DC 20005

Phone Number: 202-408-4600      Fax Number: N/A

E-Mail Address: bbrown@cohenmilstein.com

rev. 12/19 AK

Save As    Clear Form

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 22-2889

Short Caption: In re: Broiler Chicken Antitrust Litigation

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

 Plaintiff-Appellee End User Consumer Plaintiff Class

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

 Hagens Berman Sobol Shapiro LLP and Cohen Milstein Sellers & Toll, PLLC

(3)    If the party, amicus or intervenor is a corporation:

i)    Identify all its parent corporations, if any; and

 N/A

ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

 N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

 N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

 N/A

Attorney's Signature: Alison Deich    Date: January 18, 2023

Attorney's Printed Name: Alison Deich

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ☑

Address: 1100 New York Avenue NW, Suite 500, West Tower

 Washington, DC 20005

Phone Number: 202-408-4600    Fax Number: N/A

E-Mail Address: adeich@cohenmilstein.com

rev. 12/19 AK

# TABLE OF CONTENTS

**Page**

I.  JURISDICTION ................................................................1

II.  ISSUES PRESENTED .....................................................1

III.  STATEMENT OF THE CASE.............................................. 3

    A.  Early in the proceedings, Class Counsel helped the district court identify and remedy a conflict of interest. ....................................................................... 3

    B.  The End User Class prevailed in two rounds of motions to dismiss......................................................... 5

    C.  Class Counsel obtained extensive discovery aiding all classes. ............................................................... 6

    D.  Two years into the litigation, the Department of Justice intervened and benefited from Class Counsel's work................................................................ 8

    E.  The district court approved $181 million in settlements recovered for the End User Class. ..........................10

    F.  The district court awarded attorney fees of $57.4 million and recoverable expenses of $8.75 million. .................. 11

IV.  SUMMARY OF ARGUMENT.................................................12

V.  ARGUMENT ...................................................................14

    A.  The district court acted within its discretion by crediting relevant evidence of the *ex ante* market rate. ..................................................................16

        1.  The fee award aligns with Class Counsel's prior awards and empirical data on other awards in antitrust class actions in this Circuit...........................................................16

     2.     The specific circumstances of the case, familiar to the district court, also warranted a one-third fee ........................................................ 18

B.     The district court acted within its discretion by declining to give greater weight to outdated lead counsel bids from other jurisdictions. ...................................... 22

     1.     The district court considered the bids. ............................ 22

     2.     Similar bid arguments failed recently in *Lithium Batteries*. ............................................................. 25

C.     The district court acted within the discretion provided by Seventh Circuit law when it declined to award fees based on a sliding scale. .......................................... 28

D.     In determining a reasonable fee amount, the district court considered, but was not required to follow, case law and fee awards not governed by Seventh Circuit law. .................................................................................... 33

E.     The district court did not abuse its broad discretion by declining to allow all discovery that Andren sought. ...................................................................................... 35

VI.     CONCLUSION ...................................................................... 38

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Americana Art China Co. v. Foxfire Printing & Packaging, Inc.*,
    743 F.3d 243 (7th Cir. 2014) ............................................................21, 22

*In re Broiler Chicken Antitrust Litig.*,
    290 F. Supp. 3d 772 (N.D. Ill. 2017) ................................................. 5

*In re Cap. One Tel. Consumer Prot. Act Litig.*
    80 F. Supp. 3d 781 (N.D. Ill. 2015) ................................................. 30

*Dennison v. MONY Life Ret. Income Sec. Plan for Emps.*,
    710 F.3d 741 (7th Cir. 2013) ..............................................................31, 36

*EEOC v. Wal-Mart Stores E., L.P.*,
    46 F.4th 587 (7th Cir. 2022) ............................................................ 37

*Fast v. Cash Depot, Ltd.*,
    931 F.3d 636 (7th Cir. 2019) ............................................................10, 19

*In re Folding Carton Antitrust Litig.*,
    84 F.R.D. 245 (N.D. Ill. 1979) ......................................................... 8

*Fox v. Vice*,
    563 U.S. 826 (2011) .......................................................................31, 32, 35

*Gunter v. Ridgewood Energy Corp.*,
    223 F.3d 190 (3d Cir. 2000) ............................................................ 24

*Kristian v. Comcast Corp.*,
    446 F.3d 25 (1st Cir. 2006) ..............................................................16

*In re Lithium Ion Batteries Antitrust Litig.*,
    2022 WL 16959377 (9th Cir. Nov. 16, 2022) .............................. 25, 26, 27

*In re Optical Disk Drive Prods. Antitrust Litig.*,
    959 F.3d 922 (9th Cir. 2020) ........................................................... 26

*Pickett v. Sheridan Health Care Ctr.*,
    664 F.3d 632 (7th Cir. 2011) ........................................................... 23

*In re Resistors Antitrust Litig.*,
2020 WL 2791940 (N.D. Cal. Mar. 24, 2020) ........................................ 27

*Silverman v. Motorola Solutions, Inc.*,
739 F.3d 956 (7th Cir. 2013) ....................................................... 19, 20, 30

*In re Stericycle Sec. Litig.*,
35 F.4th 555 (7th Cir. 2022) .............................................................*passim*

*In re Sw. Airlines Voucher Litig.*,
898 F.3d 740 (7th Cir. 2018) .............................................................. 21, 32

*In re Synthroid Mktg. Litig.*,
264 F.3d 712 (7th Cir. 2001) .............................................................. 24, 29

*In re Synthroid Mktg. Litig.*,
325 F.3d 974 (7th Cir. 2003) ....................................................... 24, 32, 34

*In re Trans Union Corp. Priv. Litig.*,
629 F.3d 741 (7th Cir. 2011) .................................................................... 35

*Vega v. Chi. Park Dist.*,
12 F.4th 696 (7th Cir. 2021) .............................................................. 15, 35

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) .......................................................... 33, 34

*Weseley v. Spear, Leeds & Kellogg*,
711 F. Supp. 713 (E.D.N.Y. 1989) ............................................................ 16

*Williams v. Rohm & Haas Pension Plan*,
658 F.3d 629 (7th Cir. 2011) ................................................. 15, 18, 34, 35

## STATUTES

28 U.S.C. § 2106 ......................................................................................... 32

## OTHER AUTHORITIES

Fed. R. Civ. P. 23 ................................................................................... 3, 22

Third Circuit Task Force Report on Selection of Class Counsel,
74 Temp. L. Rev. 689 (2001) .......................................................... 24, 28

# I. JURISDICTION

Plaintiff-Appellee End User Consumer Plaintiff Class ("End User Class") agrees with Objector-Appellant John Andren's Jurisdictional Statement.  Opening Brief of Appellant John Andren ("AOB") at 1-2.

# II. ISSUES PRESENTED

In a multistate class consisting of tens of millions of consumers who received notice, there were just three objections.  A177.  Andren is the only class member to appeal the Memorandum Opinion and Order ("Fee Order") awarding attorney fees to co-lead counsel for the settlement class (Hagens Berman Sobol Shapiro LLP and Cohen Milstein Sellers & Toll, PLLC, together "Class Counsel").  A4.  Contrary to Andren's portrayal, the district court faithfully applied, to the record at hand, the guiding principles this Court has established for class action fee awards.  Among the district court's findings supporting the award, Class Counsel brought this private action before the Department of Justice intervened to piggyback on Class Counsel's work—not the other way around.  Class Counsel invested massive resources when few other firms expressed interest and assumed high risk with no assurance of any settlement, much less $181 million.  A5-6, 9-11.

Andren would weigh these and other factors differently to reduce the award, but this does not transform his disagreements into legal errors

reviewed *de novo*.  The specific amount awarded was a case-specific determination that fell well within the district court's discretion.

In light of the record, standard of review and Seventh Circuit law, the issues that Andren seeks to raise are more accurately stated as follows:

1.     Did the district court abuse its discretion by crediting relevant evidence of the *ex ante* market rate for antitrust class action recoveries in the Seventh Circuit?  A11-13.

2.     Did the district court abuse its discretion by giving "little weight" to three lead counsel bids in other cases, years ago in other jurisdictions, to determine the market rate?  A9.

3.     Did the district court abuse its discretion by recognizing that while a "declining scale fee award structure might be appropriate" in some cases, it was not appropriate under the specific facts of this case?  A9-11.

4.     Did the district court abuse its discretion by finding fee awards from other circuits, on the record here, "relatively unpersuasive" to the extent inconsistent with Seventh Circuit precedent?  A12.

5.     Did the district court abuse its discretion by denying part of the discovery that Andren sought because it was not relevant to the "appropriate fee award for this settlement?"  A2.

## III.   STATEMENT OF THE CASE

Andren offers a grudging assessment of the work done and risk assumed to recover $181 million in antitrust settlements from the country's largest producers of chicken meat.  *See, e.g.,* AOB at 4-13, 32-34.  As detailed below, his attempt to reframe the relevant facts must yield to the record.  The Opening Brief, likewise, gives short shrift to the district judge's conscientious management of the proceedings under Fed. R. Civ. P. 23.  Having overseen dozens of related cases generating over 6,000 docket entries, over six years, the district court was well positioned to determine a reasonable fee.  The record, including prior factual findings that Andren ignores, amply supports the finding at the interim fee stage that Class Counsel's performance was "exemplary" and warranted a "substantial award" in line with other class action fee awards in this Circuit (and in this litigation).  A11.

### A.   Early in the proceedings, Class Counsel helped the district court identify and remedy a conflict of interest.

In September 2016, Hagens Berman and Cohen Milstein filed one of the first complaints on behalf of the End User Class and moved to serve as interim co-lead counsel.  ECF No. 117 at 3 n. 2; No. 121.  Plaintiffs alleged that between 2008 and 2016, the defendant producers, such as settling defendant Tyson Foods, "conspired to fix chicken prices higher than the

market would naturally support, in violation of the Sherman Act § 1 and state law." ECF No. 541 at 1 (order denying motions to dismiss).

Andren mentions a conflict issue arising at the outset, but he does not explain how it was resolved. AOB at 5-6. Class Counsel were the first to raise the conflict of interest created by representation, in the same class, of commercial indirect purchasers and consumer indirect purchasers of broiler chicken. As Class Counsel observed, there had been cases where lead counsel for a combined consumer/commercial indirect class voluntarily dismissed consumer claims and pursued classwide relief only for commercial entities. ECF No. 121 at 1-5. In raising this concern, Class Counsel independently investigated the consumer channel, retained expert economists to evaluate and explain the different channels, and provided the district court with a legal ethics opinion. Supplemental Appendix ("SA") 74-75.

Commending Class Counsel's "aggressive and independent advocacy relating to the conflict," the district court appointed Hagens Berman as interim class counsel for an independent consumer class. SA2-3. Cohen Milstein initially was counsel for other plaintiffs and then was appointed settlement co-lead counsel for the End User Class and, when the class was

certified, interim co-lead counsel.  ECF No. 1061-2 at 211; A174; ECF No. 5644.

## B.  The End User Class prevailed in two rounds of motions to dismiss.

The End User Class defeated multiple joint and individual motions to dismiss and one motion to reconsider.  SA75.  Even for a high-stakes class action, defendants' challenge to the pleadings was an onslaught.  ECF No. 292 (joint motion to dismiss); *see also* ECF Nos. 274, 276, 282, 284, 287, 294, 296 (seven additional motions).  A lengthy published order, now frequently cited in antitrust litigation, reflects the difficulty of pleading a plausible antitrust claim in this case, including viable conspiracy allegations.  *In re Broiler Chicken Antitrust Litig.*, 290 F. Supp. 3d 772 (N.D. Ill. 2017).

The End User Class then developed legal theories increasing its leverage for settlement negotiations that came later.  The End User Class was the first to add Agri Stats as a defendant.  SA75.  It was the only class to add a rule-of-reason claim, challenging defendants' exchange of sensitive business information as part of the antitrust conspiracy.  *Id.*  This initiated a second round of motions to dismiss.  *See, e.g.,* ECF No. 804.  The End User Class also defeated defendants' renewed challenge to the operative complaint.  SA75.

**C.      Class Counsel obtained extensive discovery aiding all classes.**

Like the pleading phase, discovery in this case presented daunting challenges.  Class Counsel coordinated with lawyers for the other classes to take more than 180 depositions—up to three depositions a day.  SA76.  There have been more than 400 depositions to date.  *Id.*  End User Class representatives sat for 97 hours of depositions, averaging four hours each.  SA79.

The End User Class took the lead in questioning more than 40 of the defendants' employees and several third-party depositions.  SA76-77.  Due to time differences and the sheer volume of work, Class Counsel often began the day with a deposition at 6:00 A.M., and then worked later in the day preparing for the next day's depositions.  SA76.  Many depositions occurred during the height of the pandemic, which posed logistical challenges.  *Id.*

In addition, Class Counsel participated in more than 100 depositions of opt-out distributors and retailers, using these defendant-noticed depositions to solidify the indirect consumer claims.  SA78.  Building the case from the ground up, the classes' joint review team also analyzed more than 13 million documents.  SA75-76.

Much of this discovery was obtained over strident defense resistance. As the district court found in its Fee Order: "Plaintiffs have been opposed by many defendants, including a number of very large and well-funded corporations, which have retained some of the most prominent and sophisticated law firms in the United States." A10. Class Counsel was nonetheless largely successful in overcoming defendants' reluctance to produce relevant information.[1]

Class Counsel's success in these discovery battles benefited all three classes (the End User Class, the direct purchaser class, and the commercial class). For example, declining to limit Agri Stats' document production to a two-year period, the magistrate judge adopted the rationale proposed by the End User Class and denied a protective order. *Compare* ECF No. 941 *with* No. 1090. As a result, each class was able to use highly relevant Agri Stats documents to support their motions for class certification. SA77.

Class Counsel also faced challenges developing evidence showing "pass-through" of anticompetitive overcharges to consumers as indirect

---

[1] *See, e.g.,* ECF No. 864 (denying Tyson's motion for protective order); No. 1090 (denying Agri Stats's motion for protective order); No. 1254 (granting class plaintiffs' motion to serve interrogatories); No. 1832 (ordering third-party Porky Products to produce downstream data); No. 2010 (granting class plaintiffs' motion to compel documents claimed to be privileged); No. 3622 (granting in part class plaintiffs' motion for production of structured data).

purchasers (in contrast to direct purchasers, who did not face this issue).

Class Counsel negotiated discovery with dozens of distributors and grocery

stores to generate a wealth of data reflecting actual purchases and sales to

consumers, in particular, through the chain of distribution.  SA78.

Plaintiffs' experts, in turn, used this evidence as proof of systemic,

classwide pass-through of overcharges to class members—consumers such

as Andren who purchased chicken meat at anticompetitive prices.  *Id.*

## D.    Two years into the litigation, the Department of Justice intervened and benefited from Class Counsel's work.

Large-scale antitrust actions like this one are so risky that many, if

not most, such cases are filed only after government regulators have acted.

In such cases, courts recognize that private plaintiffs will be "undoubtedly

helped considerably by some of the evidence developed by the

government."[2]  In this case, however, the opposite occurred.  Class Counsel

advanced tens of millions of dollars in lodestar and expenses, with no

assurance of recovery, that also benefited prosecution of criminal

wrongdoing.

In 2019, when the Department of Justice announced its investigation,

the End User Class had spent over two years litigating its claims.  SA77.  By

---

[2] *In re Folding Carton Antitrust Litig.*, 84 F.R.D. 245, 251 (N.D. Ill. 1979).

this time, Class Counsel had negotiated and received significant document productions from defendants and deposed more than 80 defendant witnesses.  *Id.*  Class Counsel had also already defeated motions to dismiss and developed evidence supporting the private antitrust claims.  *Id.*

Concerned about government intervention stalling ongoing discovery, the End User Class was the only class to oppose a stay of proceedings in deference to the government's investigation.  ECF No. 2287.  This resulted, in part, in a much narrower stay than the government initially sought.  SA77-78.  The government subpoenaed defendants' document productions from Class Counsel and used some of these documents at its criminal trial.  SA78.

As the district court found in its Fee Order, Class Counsel did not have "the benefit of a prior government investigation to guide them."  A5.  "The road to some of the settlements was eventually smoothed by later criminal indictments and corporate plea agreements" but, the district court found, "[Class] Counsel's work appears to have prompted the government investigations that led to those indictments, rather than the reverse."  A11.

Andren thus disregards the record when he characterizes the federal government's involvement as acting "to protect the grand jury's

investigation." AOB at 6. Andren's partisan factual recitation to create his preferred narrative, here and elsewhere, flouts the standard of review.[3]

## E. The district court approved $181 million in settlements recovered for the End User Class.

In December 2021, while reserving a decision on attorney fees, the district court gave final approval to settlements with six defendant groups totaling $181 million for the End User Class. A172-73, 175. It certified a settlement class of consumers who purchased broiler chicken in 24 states and the District of Columbia. A173. As of December 2021, over 1.2 million class members had filed claims. A177. There were only three objections—or 0.0008% percent of all claimants. *Id.*

The district court's findings do not suggest Class Counsel have been overpaid. Among the findings supporting settlement approval:

- Despite a shorter class period covering fewer products than the two other classes proposed, $181 million was the highest recovery to date by any of the classes.
- Class Counsel adequately represented the End User Class by devoting more than 67,500 hours to the case.
- The risks of non-recovery were significant, with denial of defendants' motions to dismiss "a relatively close call."

A174-76.

---

[3] *See Fast v. Cash Depot, Ltd.*, 931 F.3d 636, 639 (7th Cir. 2019) ("underlying factual matters" in fee appeals are reviewed for clear error).

Of the three objectors, none have appealed the Rule 54(b) judgment approving the settlements. Litigation currently continues in the district court against Agri Stats and twelve defendant chicken producers who have not settled or been dismissed from the proceedings below.

## F.    The district court awarded attorney fees of $57.4 million and recoverable expenses of $8.75 million.

In October 2022, the district court ruled on Class Counsel's request to be compensated for obtaining the settlements. Class Counsel documented a joint lodestar, uncontested on appeal, totaling $32.85 million. SA80-81. After reviewing the law on class action fee awards, the district court determined that one-third of the "relevant fund amount"—meaning, after deducting expenses from the settlement recovery—was reasonable. A13-14. The district court awarded $57.4 million as attorney fees, $8.75 million for expenses, and service awards to the class representatives. A15. This appeal challenges only the fee component.

In appealing, Andren brushes aside Class Counsel's work as "a feeding frenzy for a lucrative assignment," AOB at 33, but the district court expressly found to the contrary. The district court noted that Class Counsel "invested massive resources of time and money when few other counsel expressed interest, with little assurance of success." A10. It further found that Class Counsel's performance had been "exemplary." A11. The district

court summed up as follows: "A substantial award is warranted here as a proper incentive for high quality counsel to take on complex cases, requiring a massive investment of time and money, with such a high risk of non-payment." *Id.*

The Fee Order is discussed further below as relevant.

## IV.  SUMMARY OF ARGUMENT

Andren's arguments rest on the erroneous premise that Seventh Circuit law imposes inflexible rules when making a discretionary award of attorney fees.  Whatever his personal views on fee jurisprudence, Andren does not identify any reason to disturb the fact-based rulings he has appealed.

*First*, the district court soundly relied on extensive evidence supporting a market rate of one-third the net recovery for obtaining $181 million in settlements for the End User Class.  This proof consisted of fee awards in antitrust class actions *in this Circuit*, rather than the law of other jurisdictions that Andren cites repeatedly.  Objector discovery, adduced by Andren, further undermined his position by showing that the requested fee was in line with Class Counsel's prior awards.

*Second*, Andren fails to show that a few outdated lead counsel bids in other cases are proof of anything other than what those lawyers were

willing to accept as compensation in *those* cases to represent a class, at that time. None was in the Seventh Circuit and, fundamentally, three bids do not make a market, especially 13 years after the oldest bid. Andren seeks to stretch the waning body of law on auctions—which have rightly fallen into disfavor in this Circuit and others—well beyond its logical limits.

*Third*, the district court carefully considered whether to impose a sliding scale to Class Counsel's fee request. It opted not to do so. Andren cites no authority, because there is none, that *requires* a sliding scale. The district court's analysis was faithful to Seventh Circuit law. This Court permits, but does not require, the application of sliding scales for attorney fees in class actions.

*Fourth*, the district court attached appropriate weight to fee awards governed by Ninth Circuit law. As Andren admits, the Ninth Circuit does not follow this Court's *ex ante* market rate approach to determining reasonable attorney fees. Further differing with Seventh Circuit fee jurisprudence, the Ninth Circuit follows a "megafund" rule, categorically limiting fee awards for recovering settlements of $100 million or more. The Ninth Circuit's restriction has led to smaller fee awards in large, highly successful cases than would be awarded under Seventh Circuit law. The district court properly accounted for these differences.

*Fifth*, contrary to his description of events, Andren had an opportunity in the district court to address the declarations of Professors Klonoff and Fitzpatrick.  He bypassed the opportunity to make substantive argument concerning their testimony, instead seeking discovery from these declarants.  After already allowing Andren discovery from Class Counsel, the district court acted within its discretion by declining to permit still more discovery of speculative value at best.

Beyond this, Andren's appeal is an undifferentiated critique of how lead counsel in class actions are appointed and compensated.  His policy-laden views cannot supplant well-developed Seventh Circuit law supporting the district court's fee award.  Andren fails to show any abuse of discretion that might justify further collateral litigation of the interim award of attorneys' fees.

## V.   ARGUMENT

There is no dispute that Class Counsel were entitled to a fee award. Andren contends it was too high.  This challenge—short of legal error, which he fails to demonstrate—falls squarely under the abuse of discretion standard.  As this Court reiterated recently: "We review class action fee awards deferentially, for abuse of discretion, recognizing that the district court is closer to the case than we are, and that a reasonable fee will often

fall within a broad range." *In re Stericycle Sec. Litig.*, 35 F.4th 555, 559 (7th Cir. 2022). This "highly deferential" standard of review "follows from the nature of attorneys' fees litigation." *Vega v. Chi. Park Dist.*, 12 F.4th 696, 702 (7th Cir. 2021). There is little need for "frequent appellate review of what essentially are factual matters" and "the need for uniformity in attorneys' fees awards is not great enough to warrant appellate review of minutia." *Id.*

This, however, is precisely what Andren invites here. He tries to avoid the deferential standard by framing his arguments as legal error reviewed *de novo*. AOB at 2-4. This flawed approach is not new. *See, e.g., Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 636 (7th Cir. 2011) (chiding fee objectors for "trying to insert their claims into *de novo* review"). Extensive deference, while appropriate, is unnecessary to affirm. Andren's legal discussion is cluttered with diversionary contentions not bearing on whether there should be more litigation on Class Counsel's interim fees. AOB at 15-43. His various arguments, to the extent relevant to deciding this appeal, are addressed below.[4]

---

[4] Entire passages of the Opening Brief are statements of Andren's beliefs and opinions identifying no reason to reverse and call for no response. *See, e.g.,* AOB at 22 ("The most significant problem is that courts rarely resolve fee awards in an adversarial setting."); *id.* at 38 ("Andren does not believe Class Counsel fails to litigate zealously in the Ninth Circuit.").

**A.    The district court acted within its discretion by crediting relevant evidence of the *ex ante* market rate.**

To place Andren's appeal in context, "[a]ntitrust cases by their nature are difficult and uncertain." *Kristian v. Comcast Corp.*, 446 F.3d 25, 59 n.21 (1st Cir. 2006).  Private antitrust claims, as the record in this case illustrates, have long been "notoriously complex, protracted, and bitterly fought." *Weseley v. Spear, Leeds & Kellogg*, 711 F. Supp. 713, 719 (E.D.N.Y. 1989).  Andren's challenges to Class Counsel's fees, as the district court understood, must be assessed against this backdrop.  A10-11.

**1.    The fee award aligns with Class Counsel's prior awards and empirical data on other awards in antitrust class actions in this Circuit.**

Shedding more light than three bids in hundreds of antitrust class actions over the past 10-15 years, there was a wealth of relevant evidence aiding the determination of an *ex ante* market rate.  Andren fails to show that the district court mistakenly relied on this evidence, much less to the point of abusing its discretion.

Rather than engaging in "slavish imitation of past fee awards," AOB at 43, the district court undertook a thorough analysis as required by Seventh Circuit law.  Its findings, set forth verbatim, are straightforward:

- "Most persuasive are the large number of antitrust cases in this circuit that have awarded one-third of the common fund as attorney's fees."

- ▪ "The fact that fee awards in antitrust cases in this circuit are almost always one-third is a strong indication that this should be considered the 'market rate.'"
- ▪ "Additionally, [Class] Counsel's requested fee award is in line with awards they have received in cases of similar magnitude."

A12.

As the district court found, there was "little to no precedent recommending anything other than an award of 30-33 percent." A13. Indeed, Andren helped make a record supporting the award that Class Counsel sought. The discovery produced to Andren showed that a one-third contingent fee was "well within the range of awards" Class Counsel "have received since 2016" in antitrust class actions. *Id.*; *see* A185-98.

Likewise, declarations from two professors who have researched fee awards in antitrust class actions supported a one-third award. Professor Klonoff collected 13 awards in this Circuit awarding a one-third fee between 2000 and 2020, where the recovery was as high as $200 million. SA50-51. This was not aberrational. He collected, for good measure, 14 additional awards, in complex antitrust actions specifically, where the fee was one-third. SA51-53. Similarly, from his examination of "almost 20 years" of antitrust class action fee awards, Professor Fitzpatrick concluded that "class counsel requested—and received—a flat 33⅓% in almost every" case he identified. A67. To the same effect, the End User Class cited extensive case

law supporting a one-third award under a percentage-of-the-fund

approach. ECF No. 5161 at 10-14 (fee memorandum); No. 5249 at 12-14

(response to objections); *see also* No. 5049 at 3-7 (initial brief on fees).

Andren makes no serious effort to grapple with this record. Although

cited in the Fee Order for evidentiary support, Klonoff's declaration is

omitted from Andren's appendix. *Compare* A13 *with* Aiv-vi (table of

contents). Especially given the standard of review, this will not do. The

choice to "credit[] these declarations" and other fee awards in this Circuit,

while giving "minimal weight" to Andren's preoccupation with three bids,

was "well within the district court's discretion." *Williams*, 658 F.3d at 636

(affirming fee award).

### 2. The specific circumstances of the case, familiar to the district court, also warranted a one-third fee.

The district court made additional factual findings, tethered to the

record and circumstances, further supporting a one-third award. This was

consistent with Andren's objection below, where he "acknowledge[d] that

each case is unique and presents unique challenges." A90.

The district court observed that Class Counsel "invested massive

resources of time and money when few other counsel expressed interest,"

and quoted this Court for the proposition that "'[l]ack of competition not

only implies a higher fee but also suggests that most members of the

[antitrust] bar saw this litigation as too risky for their practices.'"  A10 (quoting *Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956, 958 (7th Cir. 2013)) (bracketed language added).  Noting this was a "complex antitrust case," the district court was unpersuaded by Andren's reliance on Telephone Consumer Protection Act ("TCPA") cases where "'settlement was likely.'"  *Id.* (citation omitted).

In his effort to undermine the Fee Order, Andren repeatedly runs afoul of the clear error standard of review for factual determinations.  *Cash Depot*, 931 F.3d at 639.  Given the district court's detailed factual findings, specific to this case, the district court did not, as Andren asserts, settle on "one term: a percentage, which happens to be 30-33% for *all* antitrust cases irrespective of size or stage of litigation."  AOB at 18 (emphasis added).  Similarly, Andren's conjecture that "this litigation could not be unusually risky" cannot displace well-grounded factual findings of a district judge fully steeped in the case after six years of litigation.  *Id.* at 33.  Here, the district court expressly found that there was a "high risk of non-payment" assumed by "high quality counsel" that justified a "substantial award."  A11.

Seventh Circuit law solidly supports this rationale.  "In a high-risk case, counsel is more likely to come away with nothing and thus would negotiate a higher contingent fee ex ante."  *Stericycle*, 35 F.4th at 563.  "The

greater the risk of walking away empty-handed, the higher the award must be to attract competent and energetic counsel." *Silverman*, 739 F.3d at 958. Here, the lack of a "prior criminal or civil proceeding" provides a "useful proxy" not just for "assessing risk," but confirming the beneficial impact of Class Counsel's work. *Stericycle*, 35 F.4th at 563.

As the district court emphasized, there was piggybacking but it worked in "reverse." A11. A price-fixing conspiracy in a major industry was too risky for the federal government to tackle, for over two years, until discovery in this private action unearthed damning evidence supporting criminal indictments. SA77-78. In evaluating the factors supporting the award, these circumstances are exceptional and contrast sharply with Seventh Circuit decisions remanding a class action fee award for further proceedings. *Cf. Stericycle*, 35 F.4th at 565 ("even if class counsel carried the securities fraud ball across the goal line, the prior litigation gave them excellent starting field position").

A comparison with the settlements obtained for the direct and commercial classes, and resulting fee awards, reinforces the conclusion that the fee award here falls within the "broad range" of reasonableness. *Id.* at 559. The direct and commercial purchasers recovered settlements of $169.6 million and $103.9 million respectively, with their class counsel also

each awarded a one-third net recovery fee.  ECF No. 5229 at 1, 13 (direct class); No. 5543 at 3 (commercial class).  At $181 million, however, the End User Class recovered more, despite the challenges of proving pass-through of inflated prices for chicken and after obtaining discovery helpful to all three classes.  SA77-78.  The End User Class arguably faced the riskiest case of the three classes (due to complex pass-on issues), but achieved the highest recovery to date.  Under these circumstances, awarding Class Counsel a lower fee than counsel for the direct-purchaser and commercial classes would be fundamentally illogical.

The Fee Order did everything required under Seventh Circuit precedent.  The district court "'weighed the available market evidence and it assessed the amount of work involved, the risks of nonpayment, and the quality of representation[.]'" *Stericycle*, 35 F.4th at 559 (quoting *Williams*, 658 F.3d at 635-36).  Nothing about its analysis is "incomplete."  AOB at 18 (quoting *Stericycle*, 35 F.4th at 560).  Because it cannot be said the district court "reache[d] a conclusion that no evidence in the record supports as rational," there was no abuse of discretion.  *In re Sw. Airlines Voucher Litig.*, 898 F.3d 740, 743 (7th Cir. 2018).[5]

---

[5] Andren hints at, but does not develop, a multiplier argument.  AOB at 10, 20, 28-29.  To be clear, the district court did not conduct a lodestar analysis, and none was required.  *Americana Art China Co. v. Foxfire*

**B.    The district court acted within its discretion by declining to give greater weight to outdated lead counsel bids from other jurisdictions.**

As in virtually all antitrust class actions, except a handful in the past 13 years, Class Counsel did not submit a fee bid or proposal when seeking appointment as lead counsel for the End User Class.  ECF No. 121.  Rather than conducting an auction, the district court, as noted, drew on its broad discretionary power under Rule 23 to appoint Class Counsel.  *See* Fed. R. Civ. P. 23(g).  As his primary argument on appeal, Andren nonetheless contends that three lead counsel bids in *other* cases, two by Hagens Berman alone, should have received greater weight in determining the fee award to *both* firms here.  These are the bids in *Optical Disk* in 2010, *Lithium Batteries* in 2013, and *Resistors* in 2015.  AOB at 19-21, 24-28, 30-33, 35.  For multiple reasons, he is wrong.

**1.    The district court considered the bids.**

Here, and throughout, Andren misstates what the Fee Order plainly says.   He faults the district court for, in his words, "refusing to consider"

---

*Printing & Packaging, Inc.*, 743 F.3d 243, 247 (7th Cir. 2014).  With the fee awarded as a percentage of the common fund, there is not, and cannot be, a multiplier issue on review.  A11-13, 15.  In any event, the End User Class explained why a 1.8 multiplier, had one been awarded, was reasonable. ECF No. 5161 at 15-17 (fee motion).

the bids and assuming, central to his appeal, that "the only available evidence of the 'market rate' is past awards."  AOB at 3, 15, 18, 28.

The district court did no such thing.  It considered the bids but accorded them "little weight" and explained why.  A9.  This was within its discretion: "A district court 'is entitled to determine the probative value of each [evidentiary] submission.'  The fact that we might have weighed the evidence differently does not necessarily mean that the district court abused its discretion [in awarding attorneys' fees]."  *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 646 (7th Cir. 2011) (citations omitted).

The district court observed that the "most recent [bid] is more than seven years old," with *Optical Disk*—the only case where a bid succeeded—now 13 years old.  A9.  To the extent Andren relied on the bids to urge a declining fee structure, rather than the flat percentage awarded, the district court hewed to Seventh Circuit precedent.  As the district court noted, "declining fee scale award structures do not reflect market realities and impose a perverse incentive 'ensuring that at some point attorneys' opportunity cost will exceed the benefits of pushing for a larger recovery,

even though extra work could benefit the client.'" *Id.* (quoting *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 721 (7th Cir. 2001) ("*Synthroid I*")).[6]

In giving the bids little weight, the district court also observed that this Court, whatever the law elsewhere, has viewed lead counsel auctions with skepticism.  Among the concerns: "Lawyers will earn a competitive return even at the lower level of compensation, but the class may be worse off."  *In re Synthroid Mktg. Litig.*, 325 F.3d 974, 979 (7th Cir. 2003) ("*Synthroid II*").  In that vein, the Fee Order explained: "'[S]olvent litigants do not select their own lawyers by holding auctions, because auctions do not work well unless a standard unit of quality can be defined and its delivery verified.  There is no '"standard quantity" of legal services, and verification is difficult if not impossible.'"  A9 (quoting *Silverman*, 739 F.3d at 957).

In attacking the district court's rationale, Andren mischaracterizes the district court's reasoning.  The district court did not conflate the difference between bids and auctions.  AOB at 27.  Instead, it explained why

---

[6] Andren cites *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190 (3d Cir. 2000), for the proposition that the Third Circuit endorses class counsel auctions with competitive bidding, but the opposite is true.  AOB at 22.  A year after *Gunter* was decided, a Third Circuit Task Force, in an influential report, "concluded that auctions are generally an inferior way of appointing a counsel who will maximize class recovery."  *Third Circuit Task Force Report on Selection of Class Counsel*, 74 Temp. L. Rev. 689, 769 (2001).

bids from other cases had little probative value in determining the market rate—the correct focus, Andren agrees—for Class Counsel here. A9. Andren goes on another tangent when he proclaims that Hagens Berman's bids are "commitments" because made by "one of the country's most skilled antitrust litigation firms." AOB at 27. The compliment is appreciated but no reason to reverse, as these "commitments" were made many years ago in different cases, in different Circuits, under different factual circumstances.

### 2. Similar bid arguments failed recently in *Lithium Batteries*.

The district court's findings, grounded on Seventh Circuit law, alone suffice to reject Andren's bid arguments, but there is more. Shortly after the Fee Order last year, an appellate decision in *Lithium Batteries* rejected similar contentions.

In that case, Andren's counsel, representing a different objector, advanced similar theories on the impact (if any) of an unsuccessful bid. He argued that the lower court "abused its discretion in awarding attorney's fees . . . by failing to consider a bid submitted by [Hagens Berman] to be lead class counsel as a baseline[.]" *In re Lithium Ion Batteries Antitrust Litig.*, 2022 WL 16959377, at *1 (9th Cir. Nov. 16, 2022) (unpublished). Disagreeing, the Ninth Circuit held that "[t]he district court properly

declined to use the Hagens Berman bid as a baseline in awarding attorney's fees to class counsel." *Id.*

The rationale supports the Fee Order. The appellate panel explained that the lower court there, much like the district court's appointment here of Hagens Berman and then Cohen Milstein as co-leads, "determined that a three-firm co-lead interim counsel structure" in *Lithium Batteries* "was preferable to a sole lead counsel structure." *Id.* The bid there "was not relevant to the district court's assessment of the reasonableness of class counsel's fee request because the firm did not 'secure[ ] appointment as interim lead counsel by proposing a fee structure in a competitive bidding process.'" *Id.* (quoting *In re Optical Disk Drive Prods. Antitrust Litig.*, 959 F.3d 922, 934 (9th Cir. 2020)).

Andren thus misstates the holding and scope of *Optical Disk* when he asserts that a "competitive bid," without more, is the "starting point to determine [a] reasonable fee." AOB at 24. This is so only when the bid is successful—and submitted in the case at hand. *See Lithium Batteries*, 2022 WL 16959377, at *1; *Optical Disk*, 959 F.3d at 934. The bid closest in time also does not move the needle in Andren's favor. The *Resistors* bid, as in *Lithium Batteries*, was not accepted. The court there, citing other factors bearing on reasonableness, did not find the failed bid relevant to the award.

*In re Resistors Antitrust Litig.*, 2020 WL 2791940, at *1-2 (N.D. Cal. Mar. 24, 2020).

If a rejected bid *in the same case* is irrelevant, as recognized in *Lithium Batteries* and *Resistors*, then a prior bid in a different case cannot be, as Andren repeatedly declares, the "best evidence" of market rates. AOB at 11, 15-17, 24, 31. The district court acted well within its discretion by giving the three bids "little weight." A9.

To be sure, the Seventh Circuit, unlike the Ninth Circuit and others, calls for fee awards "in line with what an *ex ante* agreement would have produced." *Stericycle*, 35 F.4th at 558. But *Lithium Batteries* identifies the problem with Andren's effort to make bids from other cases relevant to this determination. "Importantly," the Ninth Circuit explained, "when interim counsel is selected in the manner it was in this case—as opposed to through a competitive bidding process—the risk that a firm will deliberately submit a low bid to secure the position as lead counsel only to make a substantially higher fee request when the case resolves is mitigated." *Lithium Batteries*, 2022 WL 16959377, at *1. Consequently, "when the counsel structure differs from that conceived of in the singular competitive bid submitted, *that bid offers little insight into market rates.*" *Id.* (emphasis added).

The holding in *Lithium Batteries* echoes longstanding criticisms of auctions as an ineffective yardstick for market rates. As the Third Circuit Task Force Report observed: "[A]uctions generally fail in their basic stated purpose of replicating the private market for legal services. . . . Auctions replete with structure, matrices, crossover points and the like are nothing like an arm's-length negotiation between a client and counsel. More importantly, the auction's predominant focus on price in no way approximates a client's market search for counsel." 74 Temp. L. Rev. at 737-38.

Andren offers no viable rationale for giving the three lead counsel bids any more weight than the district court accorded them in determining the market rate, and falls far short of demonstrating that the district court abused its discretion in assigning them little weight. This argument is no basis for overturning the Fee Order.

## C.    The district court acted within the discretion provided by Seventh Circuit law when it declined to award fees based on a sliding scale.

By Andren's description, "the district court mistakenly construed *Synthroid I*'s acknowledgement of a possible disadvantage of a declining scale as a holding *forbidding* declining scales." AOB at 14 (emphasis

added).  This again attributes bright lines to the district court where there are none, while ignoring the most important guideline from *Synthroid I.*

Less dogmatically, the district court concluded that a "declining scale fee award structure might be appropriate in cases in which settlement is a more likely outcome and in which the 'marginal costs' of increasing the settlement recovery amount are low."  A9 (citing *Silverman*, 739 F.3d at 959).  The district court found, however, that *this* case did not meet those criteria.  A9-11.

There is no reversible error in the district court's record-specific application of *Synthroid I.*  Andren is correct that "*Synthroid I* did not reject declining percentages for large tiers of recovery."  AOB at 28 (emphasis deleted).  But *Synthroid I* also did not *mandate* such percentages for any particular common fund fee award—a vital difference given the abuse of discretion standard.  To the contrary, this Court admonished: "This is not to say that systems with declining marginal percentages are always best."  *Synthroid I*, 264 F.3d at 721.

Andren fails to address, or even acknowledge, this crucial qualification.  The answer to whether a sliding scale should be used under Seventh Circuit law, although inconvenient to Andren's rigid position, is quite simply: it depends on the facts of the case.

A downward percentage scale, as the fund size increases, is suited to securities fraud litigation because, after liability is proved, "damages often can be calculated mechanically from movements in stock prices." *Silverman*, 739 F.3d at 959; *Stericycle*, 35 F.4th at 562.  The same "applies equally, if not more, to TCPA cases because nearly all of counsel's efforts are devoted to determining liability," while "[d]amages are fixed by statute."  *In re Cap. One Tel. Consumer Prot. Act Litig.* 80 F. Supp. 3d 781, 803 (N.D. Ill. 2015) (citing *Silverman*, 739 F.3d at 959).  An *ex ante* agreement specifying a sliding scale, as in securities cases, is entitled to "substantial weight," but there is no *ex ante* agreement here.  *Stericycle*, 35 F.4th at 563.

As the district court appreciated, a reasonable fee award in an antitrust class action turns on different considerations.  There are more issues in contention and, in turn, greater risk and unpredictability cutting against a sliding scale (or at least, sufficient to affirm here, not compelling one).  As the record reflects—common for indirect purchaser actions—there is an intensive focus on antitrust impact and damages, including the difficulty of proving that anticompetitive overcharges passed through the distribution chain to consumers.  *See, e.g.,* ECF No. 3971 at 36-41 (class certification motion).  The district court acted within its discretion by

concluding that the circumstances here, including "no government investigation preced[ing] the complaint," warranted a flat percentage instead of a sliding scale. A9-12.

Andren's other arguments for urging a sliding scale collide, once more, with the district court's findings. He contends the $181 million in settlements came "early in litigation," for fee purposes, and thus presented "less risk of nonpayment." AOB at 29-30; *see also id.* at 19 (calling this case "an 'earlier settlement' of above-average size"). But the district court assessed the facts relevant to the risk calculus differently. After overseeing the matter for more than six years, the district court was well positioned to emphasize that "settlement in a complex antitrust case like this"—generating 1,000 docket entries per year—"is far from a foregone conclusion." A10, 19, 54.

On this record, the "hosannas to discretion" replete in case law on attorney fees must have meaning. *Dennison v. MONY Life Ret. Income Sec. Plan for Emps.*, 710 F.3d 741, 747 (7th Cir. 2013). The district court's "overall sense" of the suit was that it was not just risky, but settlement for *any* amount—much less the largest recovery of all three classes—was never a given. *Fox v. Vice*, 563 U.S. 826, 838 (2011). Andren's hindsight-driven view of the litigation is a non-starter under a "deferential standard of

review" long recognizing that "'[d]istrict courts are far better suited than appellate courts to assess a reasonable fee in light of the case's history.'" *Sw. Airlines*, 898 F.3d at 743 (quoting *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 973 (7th Cir. 1991)).

Andren observes that the comeback appeal in *Synthroid II* led to a declining percentage structure. AOB at 3, 14, 17. In light of its plainly distinguishable circumstances, though, even he does not contend that *Synthroid II* could be applied "mechanically" to this case. *Id.* at 30. With the terms of a reasonable fee narrowed significantly by a prior appeal, this Court "set the fee" itself without another remand. *Synthroid II*, 325 F.3d at 980.

Here, by contrast, this Court is reviewing the exercise of discretion in the first instance when "appellate courts must give substantial deference to these determinations." *Fox*, 563 U.S. at 838. This case does not involve "multiple appeals" implicating a practical use of the plenary power, rarely exercised, to set the fee on appeal to avoid further proceedings on attorney compensation. *Synthroid II*, 325 F.3d at 980; *see* 28 U.S.C. § 2106. Indeed, even Andren does not seek such an extraordinary intervention here, but instead seeks a vacatur and remand. AOB at 43.

**D.  In determining a reasonable fee amount, the district court considered, but was not required to follow, case law and fee awards not governed by Seventh Circuit law.**

Andren makes a counterintuitive argument: the district court erred by declining to give greater, if not controlling, weight to fee awards from *outside* the Seventh Circuit.  There is a "national market for skilled antitrust counsel," he contends, with its epicenter in the Northern District of California.  AOB at 36-37.  So fee awards from there, the reasoning goes, are necessarily relevant when determining the market rate for Class Counsel here.  *Id.* at 37.  The argument does not survive scrutiny.

As the district court recognized, the focus is not whether some antitrust lawyers practice nationally—many do—but how they are compensated in light of differences from circuit to circuit.  On class action fee awards, circuit law is not homogeneous.  Importantly for deciding this appeal, as Andren admits, "other circuits do not strive to award the market rate" in the same manner as the Seventh Circuit.  *Id.* at 36.  Calling an *ex ante* inquiry "entirely illusory and speculative," the Ninth Circuit expressly declined to "adopt the Seventh Circuit's approach in percentage fee award cases."  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1049-50 (9th Cir. 2002).

In particular, for large-scale class action recoveries, Seventh and Ninth Circuit precedent differ in another critical respect, firmly supporting the limited probative value the district court gave to fee awards governed by Ninth Circuit law.  As Andren acknowledges, the Ninth Circuit follows a megafund-limitation rule that "the benchmark fee award for settlements ought to be 25%, and less for very large settlements."  AOB at 37.  But then he asserts that "the Seventh Circuit effectively has a similar rule."  *Id.*  This is incorrect.  In the district court's words: "The Seventh Circuit has expressly *rejected* a megafund rule because . . . it is a perverse incentive." A12 (emphasis added; citing *Synthroid I*, 264 F.3d at 718).  On this key doctrinal distinction, Seventh Circuit law is not in doubt.  *Compare Williams*, 658 F.3d at 636 *and Synthroid II*, 325 F.3d at 975 *with Vizcaino*, 290 F.3d at 1048.

In weighing the probative value of Andren's cited authorities, the district court drew the line in the right place.  The Fee Order explains: "[T]o the extent that courts in other circuits have awarded percentages smaller than what [Class] Counsel seek here, the Court finds those awards and their reasoning relatively unpersuasive."  A12.  Contrary to Andren's suggestion, this does not mean the district court cherry-picked more generous awards. Rather, just as this Court has repeatedly distinguished Ninth Circuit law for

- 34 -

applying a megafund rule, generating lower awards than other circuits, the

district court appropriately "discounted awards from the Ninth Circuit due

to its megafund rule" as not binding in the Seventh Circuit.  A13.

The *ex ante* fee inquiry is "inherently conjectural."  *In re Trans Union

Corp. Priv. Litig.*, 629 F.3d 741, 744 (7th Cir. 2011).  Andren seeks

mechanical precision in an area of law governed by flexible rules aiming to

achieve "rough justice" and disfavoring "speculative refinements" of the fee

amount.  *Williams*, 658 F.3d at 637.  For these reasons, the Supreme Court

discourages "appellate micromanagement" of attorney fee proceedings.

*Fox*, 563 U.S. at 838.  Andren simply fails to show that "'no reasonable

person could take the view espoused by the district court'" on the fee

amount.  *Vega*, 12 F.4th at 702.

## E.    The district court did not abuse its broad discretion by declining to allow all discovery that Andren sought.

Andren says the district court did not give any "opportunity to rebut"

the Klonoff and Fitzpatrick declarations and erroneously failed to allow

more discovery, in the form of challenges to those declarations.  AOB at 15,

35, 40-43.  Both are false issues.

As to notice, the record reflects that Andren was aware of the

declarations filed by the direct and commercial purchaser classes in the

consolidated actions below.  In December 2021, ten months *before* the

district court ruled on attorney fees, Andren filed a lengthy "offer of proof" where he bypassed an opportunity to address the substance of the declarations. A144. Instead, he merely "object[ed] to the use of such expert testimony without the opportunity to conduct discovery on the experts." A154.

So Andren's grievance is not one of notice—as he plainly had actual notice of these declarations—but discovery. Absent class member discovery rights are not boundless. *See, e.g., Stericycle*, 35 F.4th at 571. Andren does not identify any precedent for a class action objector deposing expert witnesses at the fee stage, and Class Counsel are aware of none. In addition to bypassing the opportunity to critique their analysis, Andren failed to show that the additional round of discovery he sought would have added anything material to what is already known, and in the record, concerning Klonoff and Fitzpatrick as expert declarants on fees. In this Court's words, "given the intrusive nature of the discovery and the limited value it seemed likely to provide, it was not an abuse of discretion" for the district court to deny further discovery. *Id.*; *see also Dennison*, 710 F.3d at 746 ("in a class action suit with a thousand or more class members," courts "drowning in discovery" need not allow more where burden "could be considerable").

The district court struck a reasonable balance by allowing confidential discovery from Class Counsel concerning their past bids and awards, but not "information beyond actual bid and award amounts." A2. Of course, district courts have "broad discretion in discovery-related matters." *EEOC v. Wal-Mart Stores E., L.P.*, 46 F.4th 587, 601 (7th Cir. 2022). Because Andren has not demonstrated that "'the judge's ruling lacks a basis in law or fact or clearly appears to be arbitrary,'" there was no abuse of discretion. *Stericycle*, 35 F.4th at 567; *see also id.* at 571 (emphasizing that "[t]hese issues are case- and fact-specific").

Finally, as a corollary to his discovery argument, Andren says the district court inappropriately drew on Klonoff and Fitzpatrick for "expert opinions about the law." AOB at 15, 41. This assertion merely seeks to repackage Andren's disagreement with their analysis. Andren does not oppose drawing on the experts' empirical research of fee arrangements and awards. This is all the district court did, while identifying and following Seventh Circuit precedent. A7-12, 67; SA50-51. As has been the case since 2016, the district court considered and weighed the available evidence and ably applied the relevant Seventh Circuit law. There was no abdication of judicial responsibility, and no abuse of discretion.

# VI.  CONCLUSION

The Fee and Discovery Orders should be affirmed.  A1-16.

Dated: February 1, 2023          Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By */s/ Steve W. Berman*
      STEVE W. BERMAN

HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
steve@hbsslaw.com

Shana E. Scarlett
Rio S. Pierce
Breanna Van Engelen
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 300
Berkeley, CA  94710
Telephone: (510) 725-3000
shanas@hbsslaw.com
riop@hbsslaw.com
breannav@hbsslaw.com

Kevin K. Green
HAGENS BERMAN SOBOL SHAPIRO LLP
533 F Street, Suite 207
San Diego, CA  92101
Telephone: (619) 929-3340
keving@hbsslaw.com

Brent W. Johnson
Benjamin D. Brown
Daniel H. Silverman
Alison Deich
COHEN MILSTEIN SELLERS & TOLL, PLLC
1100 New York Avenue NW
Suite 500, West Tower
Washington, DC 20005
Telephone: (202) 408-4600
bjohnson@cohenmilstein.com
bbrown@cohenmilstein.com
dsilverman@cohenmilstein.com
adeich@cohenmilstein.com

*Counsel for Plaintiff-Appellee End User
Consumer Plaintiff Class*

# CERTIFICATE OF COMPLIANCE

I hereby certify that:

1.      This document complies with the type-volume limitation of Cir. R. 32(c) because it contains 7,980 words, excluding the parts exempted by Fed. R. App. P. 32(f), as calculated by the word processing system used to prepare the document.

2.      This document further complies with the typeface requirements of Fed. R. App. P. 32(a)(5), the type-style requirements of Fed. R. App. P. 32(a)(6), and Cir. R. 32(b) because it has been prepared in a proportionately spaced typeface of 14 points or more.

Dated: February 1, 2023

*/s/ Steve W. Berman*
STEVE W. BERMAN

## CERTIFICATE OF SERVICE

I hereby certify that on February 1, 2023, I electronically filed the foregoing document using the CM/ECF system, which will send notification of such filing to the e-mail addresses registered in the CM/ECF system, as denoted on the Electronic Mail Notice List.

*/s/ Steve W. Berman*
STEVE W. BERMAN